UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| PAUL A. WHITE and JAMES SHAW individually and on behalf of all others similarly situated, | § § § § | Docket No. 4:18-cv-01983 |
| Plaintiffs, | § § | |
| v. | § § | JURY TRIAL DEMANDED |
| KSW OILFIELD RENTAL, LLC; AND DUPRE ENERGY SERVICES, LLC | § § § § § | COLLECTIVE ACTION 29 U.S.C. § 216(b) |
| Defendant. | § § | |

**PLAINTIFFS' OPPOSED MOTION FOR CONDITIONAL CERTIFICATION AND
FOR NOTICE TO PUTATIVE CLASS MEMBERS**

**Michael A. Josephson**
State Bar No. 24014780
**Andrew W. Dunlap**
State Bar No. 24078444
**JOSEPHSON DUNLAP LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Tel: (713) 352-1100
Fax: (713) 352-3300
mjosephson@ mybackwages.com
adunlap@ mybackwages.com

**Richard J. (Rex) Burch**
State Bar No. 24001807
**BRUCKNER BURCH, PLLC**
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
Tel: (713) 877-8788
Fax: (713) 877-8065
rburch@brucknerburch.com

**ATTORNEYS FOR PLAINTIFFS AND THE PUTATIVE CLASS MEMBERS**

**TABLE OF CONTENTS**

**TABLE OF EXHIBITS** ................................................................................................................. iii

**TABLE OF AUTHORITIES** ....................................................................................................... iv

1. **Introduction And Summary Of The Argument** ................................................................ 1

2. **The Facts** ............................................................................................................................. 1

   A. KSW's operations. ......................................................................................................... 1
   B. Plaintiffs and the Putative Class Members perform the same job duties. ..................... 2
   C. SCCs work similar hours for similar pay. ..................................................................... 2
   D. KSW directed, controlled, and supervised SCCs. ......................................................... 3
   E. SCCs do not take on financial risk or have opportunity for profit or loss. ................... 3
   F. No specialized skills or experience is required. ............................................................ 3

3. **Conditional Certification Is Appropriate Because The Class Is "Similarly Situated."** 4

   A. The standard for conditional certification is lenient. .................................................... 4
      1. The Putative Class Members are similarly situated under the two-stage Lusardi approach. ......................................................................................... 5
      2. The Putative Class Members share common job duties and pay provisions. .......... 7
   B. Merit issues are not relevant to a decision on conditional certification. ....................... 8
   C. Employment status is a merits-based analysis and is premature at the notice stage. .... 9
   D. The statute of limitations is running on Putative Class Members' valuable and viable claims. ................................................................................................................ 11

4. **Relief Sought**. ..................................................................................................................... 11

   A. The production of contact information is routine in FLSA collective actions ........... 11
   B. Plaintiffs' Counsel should be allowed telephone follow-up for undeliverable mail. .. 13
   C. KSW's communications with SCCs about the lawsuit should be prohibited. ............ 13

5. **Conclusion** .......................................................................................................................... 14

# TABLE OF EXHIBITS

| Ex. | Document |
|---|---|
| 1 | Declaration of Paul White |
| 2 | Declaration of James Shaw |
| 3 | Proposed Notice and Consent Forms |
| 4 | Proposed Email Notice |
| 5 | Proposed Telephone Script |
| 6 | *Hernandez v. Apache,* No. 4:16 cv 03454, (S.D. Tex. Sept. 8, 2017) Minutes entry & Transcript |

# TABLE OF AUTHORITIES

**Cases**

*Alba v. Madden Bolt Corp.*, C.A. No. 4:02-cv-1503, 2002 WL 32639827, (S.D. Tex. Jun. 5, 2002) .......14
*Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 519 (5th Cir. 2010).......................... 5, 7
*Barnard v. Intertek USA Inc.*, C.A. No. 4:11-cv-2198, Order [ECF No. 99]
   (S.D. Tex. May 2, 2012) ...............................................................................................................14
*Baucum v. Marathon,* No. 4:16 cv 03278, Order [ECF No. 24] (S.D. Tex. July 14, 2018) .....................8
*Beall v. Tyler Technologies, Inc.*, No. Civ. A. 2-08-CV-422, 2009 WL 3064689,
   (E.D. Tex. Sept. 23, 2009)...............................................................................................................8
*Benzon v. National Oilwell Varco, LP*, C.A. No. 4:14-cv-2582, Order [ECF No. 33]
   (S.D. Tex. Jun. 18, 2015) ...............................................................................................................14
*Boudreaux v. Schlumberger Tech. Corp.*, No. 6:14-cv-2267, [ECF No. 50] (W.D. La. Feb. 25, 2015)........12
*Bernal v. Vankar Enterprises, Inc.*, C.A. 5:07-cv-00695, 2008 WL 791963, (W.D. Tex.
   Mar. 24, 2008) .................................................................................................................................6
*Cantu v. Vitol, Inc.*, CA H-09-0576, 2009 WL 5195918, at *3 (S.D. Tex.
   Dec. 21, 2009) (Rosenthal, J.) ........................................................................................................5
*Christianson v. NewPark Drilling Fluids, LLC*, Civ. A. No. H-14-3235, 2015 WL 1268259,
   (S.D. Tex. Mar. 19, 2015) .............................................................................................................10
*Coffin v. Blessey Marine Servs., Inc.*, C.A. 4:11-cv-00214, 2011 WL 1103795, (S.D. Tex.
   Mar. 23, 2011) ............................................................................................................................ 5, 7
*Collazo v. Forefront Educ., Inc.*, C.A. 1:08-cv-05987, 2010 WL 335327, (N.D. Ill.
   Jan. 28, 2010) ............................................................................................................................. 5, 7
*Crow v. ProPetro Servs.*, No. 7:15-cv-00149-RAJ-DC, ECF No. 33, (W.D. Tex. May 4, 2016)...... 4, 5, 12
*Davida v. Newpark Drilling Fluids, LLC*, No. 5:14-cv-00552, ECF No. 47, (W.D. Tex.
   Jan. 6, 2015)....................................................................................................................................4
*Dreyer v. Baker Hughes Oilfield Operations, Inc.*, C.A.. 4:08-cv-01212, 2008 WL 5204149,
   (S.D. Tex. Dec. 11, 2008) ...............................................................................................................5
*Durbin v. Advanced Pipeline Svcs., LLC*, No. 13-cv-0136, Order [ECF No. 34],
   (S.D. Tex. Jan. 13, 2014)..............................................................................................................13
*Dybach v. State of Fla. Dept. of Corrections.*, 942 F.2d 1562, 1567-68 (11th Cir. 1991)......................8
*Dyson v. Stuart Petroleum Testers, Inc.*, 308 F.R.D. 510 (W..D. Tex. 2015).................................. 12, 13
*Fisher v. Michigan Bell Telephone Co.*, C.A. 2:09-cv-10802, 2009 WL 3427048,
   (E.D. Mich. Oct. 22, 2009) ...........................................................................................................11
*Foraker v. Highpoint Southwest Servs., L.P.*, CA. H- 06-1856, 2006 WL 2585047,
   (S.D. Tex. Sept 7, 2006) .................................................................................................................5
*Garner v. G.D. Searle*, 802 F. Supp. 418, 422 (M.D. Ala. 1991) ...........................................................6
*Gee v. Suntrust Mortgage, Inc.*, No. C-10-1509-RS, 2011 WL 722111, (N.D. Cal. Feb 18, 2011)................9
*Gonyer v. Allied Transp. Co.*, No. 2:13-cv-267, Order [ECF No. 85], (S.D. Tex. Jun. 11, 2014) ............13
*Grayson v. K-Mart Corp.*, 79 F.3d 1086, 1096 (11th Cir. 1996) ...................................................... 4, 6
*Harper v. Lovett's Buffet, Inc.*, 185 F.R.D. 358, 365 (M.D. Ala. 1999)................................................10
*Heeg v. Adams Harris, Inc.*, 907 F. Supp. 2d 856, 861 (S.D. Tex. 2012) ..............................................8
*Herrera v. Schlumberger Technology Corporation*, 5:16-cv-00526-FB, ECF No. 33,
   (W.D. Tex. Apr. 3, 2017).................................................................................................................4
*Hernandez v. Apache*, No. 4:16-cv-03454, (S.D. Tex. Sept. 8, 2017)....................................................8
*Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 169 (1989) .................................................... 4, 7

*Jackson v. New York Telephone Co.*, 163 F.R.D. 429, 431 (S.D.N.Y. 1995) .................................................. 4
*Jaso v. Bulldog Conn. Specialists LLC*, No. 2:15-cv-269, Order [ECF No. 17],
  (S.D.Tex. Oct. 15, 2015) ............................................................................................................... 12
*Jirak v. Abbott Labs., Inc.,* 566 F. Supp. 2d 845, 847 (N.D. Ill. 2008) ................................................ 7
*Jones v. JGC Dallas LLC*, 2012 WL 6928101 (N.D. Tex. Nov. 29, 2012 ........................................ 8
*Kibodeaux v. Wood Group Prod. and Consulting Servs., Inc.*, Civ. A. No. 4:16-CV- 3277, 2017
  WL1956738, (S.D. Tex. May 11, 2017) ........................................................................................ 10
*Krueger v. New York Tel. Co.*, Civ. A. No. 93-cv-0178, 1993 WL 276058, (S.D.N.Y. Jul. 21, 1993) ...... 10
*Kolasa v. BOS,* No. 2:17 cv 01087, Order [ECF No. 95] (W.D. Penn. July 10, 2018) ............................. 8
*Lopez v. WS Energy Svcs., LLC*, No. 2:15-cv-135, Order [ECF No. 33], (S.D. Tex. Oct. 15, 2015) ..... 13
*Mooney v. Aramco Servs. Co.,* 54 F.3d 1207, 1213-16 (5th Cir. 1995) ................................... 4, 5, 6
*Moore v. Bottom Line Svcs., LLC*, No. 2:13-cv-121, Order [ECF No. 26],
  (S.D. Tex. Nov. 14, 2013) .............................................................................................................. 13
*Ortiz v. Rain King, Inc.,* C.A. 4:02-cv-04012, 2003 WL 23741409 (S.D. Tex. Mar. 10, 2003) .................. 6
*Parrish v. Premier,* No. 5:16 cv 00417, Order [ECF No. 30] (W.D. Tex. Nov. 7, 2016) ......................... 8
*Pacheco v. Aldeeb*, Cv. No. 5:14-CV-121-DAE, 2015 WL 159570, (W.D. Tex. Mar 31, 2015) ............... 13
*Prejean v. O'Brien's Resp. Mgmt., Inc.,* 2013 WL 5960674, (E.D. La. Nov. 6, 2013) ........................... 9
*Reyes v. Texas Ezpawn, L.P.*, 459 F. Supp. 2d 546, 551-52 (S.D. Tex. 2006) ..................................... 5
*Rodriguez v. Stage 3 Separation, LLC*, No. 5:14-cv-603-RP, Order [ECF No. 57]
  (W.D. Tex. Mar. 16, 2015) ....................................................................................................... 11, 12
*Russell v. Illinois Bell Tel. Co.*, 575 F. Supp. 2d 930, 933 (N.D. Ill. 2008) ......................................... 7
*Scovil v. FedEx Ground Package Sys., Inc.*, 811 F.Supp.2d 516, 519 (D. Me. 2011) ........................ 9
*Sperling v. Hoffmann-La Roche, Inc.*, 118 F.R.D. 392, 407 (D. N.J. Jan. 5, 1988) ........................ 6, 7
*Tice v. AOC Senior Home Health Corp.*, 826 F.Supp.2d 990, 998 (E.D. Tex. 2011) ........................ 12
*Tolentino v. C&J Spec-Rent Services, Inc.*, C.A. 2:09-cv-00326, 2010 WL 2196261,
  (S.D. Tex. May 26, 2010) ................................................................................................................ 8
*Tucker v. Labor Leasing, Inc.,* 872 F. Supp. 941, 947 (M.D. Fla. 1994) ............................................. 6
*Vargas v. The Richardson Trident Co.*, CA H-9-1674, 2010 WL 730115,
  (S.D. Tex. Feb. 22, 2010) ................................................................................................................ 5
*Vaughn v. Document Grp. Inc.,* 250 F. Supp. 3d 236, 242-43 (S.D. Tex. 2017) ............................... 10
*Vassallo v. Goodman Networks, Inc.*, No. 4:15-cv-97, 2015 WL 3793208, (E.D. Tex. Jun. 17, 2015) ...... 12
*Walker v. Honghua Am., LLC*, 870 F. Supp. 2d 462, 465 (S.D. Tex. 2012) ........................................ 8
*Wesley v. COG Operating, LLC,* No. 4:17 cv 01845, Order [ECF No. 29] (S.D. Tex. Jan. 26, 2018) ...... 8
*Wittemann v. Wisconsin Bell, Inc.*, C.A. 3:09-cv-00440, 2010 WL 446033,
  (W.D. Wis. Feb. 2, 2010) ................................................................................................................ 7
*Zook v. W&W Energy Svcs., Inc.*, No. 7:15-cv-00201-RAJ-DC, Order [ECF No. 21],
  (W.D. Tex. May 5, 2016) ............................................................................................................... 12

**Statutes**

29 U.S.C §216 ............................................................................................................................. *passim*

29 U.S.C §215 ..................................................................................................................................... 13

**Other Authorities**

https://www.ksw.com/aboutus ........................................................................................................... 1

1.      **Introduction and Summary of the Argument.**

KSW Oilfield Rental ("KSW" or "Defendant") did not pay the overtime wages required under the Fair Labor Standards Act, 29 U.S.C. §216(b) ("FLSA") to its Solids Control Consultants ("SCC") workforce. Instead, KSW misclassifies them as independent contractors and pays them a day rate without any overtime pay. KSW's pay practice is unlawful because its SCCs should have been classified as employees and received overtime pay for all hours they worked in excess of forty hours in a workweek.

Paul White and James Shaw ("Plaintiffs" "White and Shaw") seek to notify their coworkers – other SCCs classified as day rate independent contractors by KSW – so they can make an informed decision about joining their similar claims and stop the statute of limitations from running on their valuable overtime pay claims. At this stage, the merits of White and Shaw's claims and KSW's defenses are largely irrelevant as the Court considers Plaintiffs' request for conditional certification. An order conditionally certifying the proposed FLSA collective action does not require this Court to consider the Plaintiff's likelihood of success. Rather, conditional certification merely triggers the process by which affected employees - whose FLSA limitation periods have not yet been tolled - may be informed of this lawsuit and are provided an opportunity to join. As shown below, Plaintiff has more than met the **_lenient standard_** for conditional certification and notice should be issued immediately.[1]

2.      **The facts.**

   A.   **KSW's operations.**

KSW is a national leader in providing fluid management equipment and solids control to the oil and gas industry. *See* Our companies, KSW Oilfield Rental, https://www.dupre.com/kswoilfield (last visited September 10, 2018).

---

[1] Plaintiff's motion is supported in part by the declaration of Paul White (Ex. 1); and declaration of James Shaw (Ex. 2).

### B. Plaintiffs and the Putative Class Members perform the same job duties.

Throughout their employment with KSW, the SSCs' job is to set up and operate the SCC equipment, collect data, and take down the equipment when they are done. White Decl. at ¶ 10; Shaw Decl. at ¶ 10.

### C. SCCs work similar hours for similar pay.

KSW schedules SCCs to work standard oilfield twelve hour (12) shifts seven days a week. *See* Ex. 1 ¶7; Ex. 2 ¶7. In addition to these shifts, regularly scheduled pre and post shift meetings along with any problems with equipment or the drilling process would require SCCs to work additional hours beyond their regularly scheduled shifts. On top of the standard twelve and a half hour shifts, SCCs are required to be on call twenty four (24) hours a day as needed while on location. *Id.*

KSW did not have a time clock and never required SCCs to record or report their hours. KSW simply paid for the days SCCs worked. White, Shaw and the Putative Class Members worked for KSW during the statutory time period were paid a day rate regardless of the number of hours that they worked. *See* Ex. 1, ¶3, Ex. 2, ¶3. KSW never paid SCCs overtime pay.

When KSW required White and the Putative Class Members to work in excess of 40 hour per week, KSW did not pay them overtime. *See* Ex. 1, ¶8, Ex. 2, ¶8. As demonstrated, KSW paid White and others similarly situated the same hourly rate for all days worked, including those in excess of 40 hours in a workweek. *See* Ex. 1, ¶9, Ex. 2, ¶9.

The illegal pay practices used by KSW at issue in this case are widespread and systematically applied to all Putative Class Members. *See* Ex. 1, ¶7, Ex. 2, ¶7. These "day rate" employees who did not receive overtime share a common experience. *See* Ex. 1, ¶9, Ex. 2, ¶9. Because this uniform pay practice applies to all similarly situated employees, this case is appropriate for immediate conditional certification to prevent the overtime claims held by Putative Class Members from expiring.

### D. KSW directed, controlled, and supervised SCCs.

KSW has the authority to decide which SCCs work on their projects and ban or fire SCCs from future work at KSW. KSW's coordinators assigned SCCs to rigs. KSW tells SCCs whether they are working the day or night shift. *See* Ex. 1, ¶4, 5, Ex. 2, ¶4, 5. KSW required SCCs to remain at a drill site once they were assigned until released. *See* Ex. 1, ¶7, Ex. 2, ¶7. SCCs were required to remain at the rig site until their relief arrived, even if they had to wait beyond their normal shift.

When there are problems, the SCCs needed a part, piece of equipment, etc., SCCs call KSW. KSW does not allow SCCs to hire others to help with their work. *See* Ex. 1, ¶15, Ex. 2, ¶15. SCCs are required to personally do the work. SCCs are not allowed to choose their relief or coworkers on site. SCCs cannot refuse assignments without risk of termination or being sidelined for weeks.

### E. SCCs do not take on financial risk or have opportunity for profit or loss.

SCCs do not risk capital. They work for daily wages, not a cut of the profits. SCCs only need to provide reliable transportation, boots, gloves and eyewear. More importantly, KSW provides the sophisticated, expensive equipment, machinery, computers, and hand tools. *See* Ex. 1, ¶4, Ex. 2, ¶4. The cost of KSW's equipment is well beyond the purchasing power of SCCs earning a day rate.

SCCs do not advertise or market SCC services or have their own clients. Instead, they are employed by KSW to provide SCC services to KSW's clients. SCCs are not financially responsible for any down time or damaged equipment.

### F. No specialized skills or experience is required.

KSW did not require significant prerequisite training, certification, or experience. No advanced degree is required by KSW to work as a SCC. See Ex. 1, ¶12, Ex. 2, ¶12. Instead, KSW trained SCCs on-the-job. Newer SCCs are usually assigned to work as a green hand working alongside more experienced SCCs.

### 3. Conditional certification is appropriate because the class is "similarly situated."

#### A. The standard for conditional certification is lenient.

The FLSA's "collective action" provision allows one or more employees to bring an action for overtime compensation on "behalf of himself or themselves and other employees similarly situated." 29 U.S.C. §216(b) District courts have broad discretion to allow a party asserting FLSA claims on behalf of others to notify potential plaintiffs that they may choose to "opt-in" or bring a claim on their own behalf. *See Hoffman-La Roche, Inc. v. Sperling,* 493 U.S. 165, 169 (1989). Court-authorized notice protects against "misleading communications" by the parties, resolves the parties' disputes regarding the content of any notice, prevents the proliferation of multiple individual lawsuits, assures joinder of additional parties is accomplished properly and efficiently, and expedites resolution of the dispute. *Id.* at 170-172.

Under Section 216(b), an employee need only show that he is suing his employer for himself and on behalf of other employees "similarly situated." *Mooney v. Aramco Servs. Co.,* 54 F.3d 1207, 1213-16 (5th Cir. 1995); *Grayson v. K-Mart Corp.,* 79 F.3d 1086, 1096 (11th Cir. 1996). Plaintiffs' claims need not be identical to the potential opt-ins, they need only be similar. *See Crow v. ProPetro Servs.,* No. 7:15-cv-00149-RAJ-DC, ECF No. 33, (W.D. Tex. May 4, 2016) (Junell, R.)(nationwide certification of a class of misclassified operators); *Davida v. Newpark Drilling Fluids, LLC,* No. 5:14-CV-00552, ECF No. 47, (W.D. Tex. Jan. 6, 2015) (Bemporad, H.) (nationwide certification of a class of fluid service technicians); *Herrera v. Schlumberger Technology Corporation,* 5:16-cv-00526-FB, ECF No. 33, (W.D. Tex. Apr. 3, 2017) (Chestney, E.) (nationwide certification of a class of cement field specialists).

In fact, Plaintiffs need to only demonstrate "a reasonable basis" for the allegation that a class of similarly situated persons may exist. *Grayson,* 79 F.3d at 1097; *Jackson v. New York Telephone Co.,* 163 F.R.D. 429, 431 (S.D.N.Y. 1995) (Plaintiffs are similarly situated when they together were alleged victims of a common policy or scheme or plan that violated the law).

### 1. The Putative Class Members are similarly situated under the two-stage *Lusardi* approach.

Courts in this and other districts apply a two-step approach to determine whether plaintiffs are "similarly situated" to the potential plaintiff. *See Crow v. ProPetro Servs.*, No. 7:15-cv-00149-RAJ-DC, ECF No. 33, (W.D. Tex. May 4, 2016) (Junell, R.) *Coffin v. Blessey Marine Servs., Inc.,* C.A. 4:11-cv-00214, 2011 WL 1103795, at *3 (S.D. Tex. Mar. 23, 2011) Under the *Lusardi* approach, the court "determines whether the putative class members claims are sufficiently similar" to authorize notice to potential class members. *Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 519 (5th Cir. 2010) (citing *Mooney*, 54 F.3d 1207, 1213-14 (5th Cir. 1995).

The first step requires plaintiff to "show there are similarly situated employees who are potential claimants." *Collazo v. Forefront Educ., Inc.*, C.A. 1:08-cv-05987, 2010 WL 335327, at *2 (N.D. Ill. Jan. 28, 2010). Plaintiff meets this burden by making "a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." *Id.* Because the first step takes place prior to the completion of discovery, the standard for notice "is a lenient one." *Mooney*, 54 F.3d at 1214; *Vargas v. The Richardson Trident Co.*, CA H-9-1674, 2010 WL 730115, at *7 (S.D. Tex. Feb. 22, 2010) (Harmon, J.) (noting the certification of collective actions is subject to a two-step process with a lenient standard that typically results in conditional certification of a representative class)*; Cantu v. Vitol, Inc.*, CA H-09-0576, 2009 WL 5195918, at *3 (S.D. Tex. Dec. 21, 2009) (Rosenthal, J.) *Foraker v. Highpoint Southwest Servs., L.P.*, CA. H- 06-1856, 2006 WL 2585047, at *3 (S.D. Tex. Sept 7, 2006) (Atlas, J.); *Reyes v. Texas Ezpawn, L.P.*, 459 F. Supp. 2d 546, 551-52 (S.D. Tex. 2006) ("The court's decision [at the notice stage] is usually based only on the pleadings and any affidavits that have been submitted."); *Dreyer v. Baker Hughes Oilfield Operations, Inc.,* C.A.. 4:08-cv-01212, 2008 WL 5204149, *1 (S.D. Tex. Dec. 11, 2008) (the standard at this stage is lenient; the Plaintiff must show only that there is some factual basis for trying

their cases together with the cases of other potential members.); *Bernal v. Vankar Enterprises, Inc.,* C.A. 5:07-cv-00695, 2008 WL 791963, *3 (W.D. Tex. Mar. 24, 2008) ("This determination is based solely on the pleadings and affidavits and the standard is a lenient one typically resulting in conditional certification of a representative class to whom notice is sent and who receive an opportunity to "opt in."").

In deciding whether notice should be issued, courts only require "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *Mooney*, 54 F.3d at 1214, n. 8. Doing the opposite would unnecessarily hinder the development of collective actions and would undermine the "broad remedial goals" of the FLSA. *Garner v. G.D. Searle*, 802 F. Supp. 418, 422 (M.D. Ala. 1991); *Sperling v. Hoffmann-La Roche, Inc.*, 118 F.R.D. 392, 407 (D. N.J. Jan. 5, 1988) ("[N]otice to absent class members need not await a conclusive finding of 'similar situations.'").

An employee need only show that he is suing his employer for himself and on behalf of other employees "similarly situated." *Mooney*, 54 F.3d at 1213-14; *Grayson*, 79 F.3d at 1096. It is important to note that the Plaintiffs' claims and positions need not be identical to the potential opt-ins', only similar. *Grayson*, 79 F.3d at 1096; *Tucker v. Labor Leasing, Inc.,* 872 F. Supp. 941, 947 (M.D. Fla. 1994). In a case granting class notice, Judge Jack held:

> [T]he court need not find uniformity in each and every aspect of employment to determine [that] a class of employees is similarly situated. The remedial nature of the FLSA and § 216 militate strongly in favor of allowing cases to proceed collectively.

*Tolentino v. C&J Spec-Rent Services, Inc.*, C.A. 2:09-cv-00326, 2010 WL 2196261, at *4 (S.D. Tex. May 26, 2010) (Jack, J.). Further, the Plaintiffs need to only demonstrate "a reasonable basis" for the allegation that a class of similarly situated persons exists. *Grayson*, 79 F.3d at 1097. Substantial evidence, documents, or declarations are not required for certification. *See Ortiz v. Rain King, Inc.,* C.A. 4:02-cv-04012, 2003 WL 23741409 (S.D. Tex. Mar. 10, 2003) (Lake, J.) (one declaration and the complaint

6

sufficient).

At the second step, "following the completion of the opt-in process and further discovery, the Defendant may ask the Court to reevaluate the conditional certification to determine whether there is sufficient similarity between the Representative Plaintiff and opt-in Plaintiff to allow the matter to proceed to trial on a collective basis." *Russell v. Illinois Bell Tel. Co.*, 575 F. Supp. 2d 930, 933 (N.D. Ill. 2008) (quoting *Jirak v. Abbott Labs., Inc.,* 566 F. Supp. 2d 845, 847 (N.D. Ill. 2008)); *Wittemann v. Wisconsin Bell, Inc.*, C.A. 3:09-cv-00440, 2010 WL 446033, at *3 (W.D. Wis. Feb. 2, 2010) ("If, after discovery, defendant shows that any differences among the class members make it too difficult to decide their claims together, defendant may ask to decertify the class or divide the class into subclasses.").

Once the Court determines that the employees are similarly situated, notice is sent and new plaintiffs may "opt in" or file their own claim. *Acevedo*, 600 F.3d at 519 (citing *Mooney*, 54 F.3d at 1214). Ultimately, allowing early notice and full participation by the putative class members "assures that the full 'similarly situated' decision is informed, efficiently reached, and conclusive." *Sperling*, 118 F.R.D. at 406. Once the notice period is complete, the court will have the benefit of knowing the actual makeup of the collective action. Thus, early notice helps courts to manage the case because it can "ascertain the contours of the action at the outset." *Hoffmann-La Roche,* 493 U.S. at 172.

### 2. The Putative Class Members share common job duties and pay provisions.

In order for notice to be issued, some evidence of "a single decision, policy, or plan" should be presented. *Collazo*, 2010 WL 335327, at *2. Proof of such a single practice can be provided through declarations of potential plaintiffs, identification of potential plaintiffs, and/or evidence of a widespread plan. *Id.* In addition to these factors, some courts consider whether other individuals desire to opt-in and are similarly situated to those bringing the suit. *Dybach v. State of Fla. Dept. of*

*Corrections.*, 942 F.2d 1562, 1567-68 (11th Cir. 1991).

White and Shaw meet the lenient standard for conditional certification because the evidence attached to this motion confirms the uniform nature of KSW's compensation practice and the identity of a class of similarly situated individuals. White and Shaw's evidence makes clear that all SCCs are paid a day rate without overtime, and that they perform generally similar job duties. *See generally,* Exs. 1-2.

KSW will likely argue that this case is inappropriate for conditional certification by suggesting the inquiry is inherently "individualized" or "fact-intensive" because it relied on multiple staffing companies and vendors to provide these day rate workers. But KSW still treated all of the SCCs as day rate independent contractors. To the contrary, KSW itself treated all SCCs the same regardless of any individualized factors. Courts have repeatedly rejected various iterations of this argument and have certified overtime disputes for similar collective treatment.

Allegations of contractor misclassification, like those in this case, have been found by several courts to be a sufficient common policy or plan for conditional certification purposes. E.g., *Parrish v. Premier,* No. 5:16 cv 00417, Order [ECF No. 30] (W.D. Tex. Nov. 7, 2016); *Wesley v. COG Operating, LLC,* No. 4:17 cv 01845, Order [ECF No. 29] (S.D. Tex. Jan. 26, 2018); *Baucum v. Marathon,* No. 4:16 cv 03278, Order [ECF No. 24] (S.D. Tex. July 14, 2018); *Hernandez v. Apache,* No. 4:16 cv 03454, (S.D. Tex. Sept. 8, 2017)(minutes entry, transcript attached); *Kolasa v. BOS,* No. 2:17 cv 01087, Order [ECF No. 95] (W.D. Penn. July 10, 2018).

**B.     Merit issues are not relevant to a decision on conditional certification.**

A disagreement about the merits of Plaintiffs' claim is not grounds for denying conditional certification. It is well-established that "courts are not to engage in merits-based analysis at the notice stage of a collective action." *Jones v. JGC Dallas LLC*, 2012 WL 6928101 (N.D. Tex. Nov. 29, 2012) adopted, 2013 WL 271665 (N.D. Tex. Jan. 23, 2013); *see also, Heeg v. Adams Harris, Inc.*, 907 F. Supp.

2d 856, 861 (S.D. Tex. 2012) ("courts do not review the underlying merits of the action in determining whether to conditionally certify"); *Walker v. Honghua Am., LLC*, 870 F. Supp. 2d 462, 465 (S.D. Tex. 2012) (same).

Rather, the important inquiry is whether the merits issues and defenses raised in KSW's Answer can be resolved class-wide. *See* ECR No. 7, Defendant's Ans., at Aff. Defs. For example, Defendant pleads that the Putative Class Members were excluded from the FLSA overtime requirements because they were subject to FLSA exemptions. By pleading defenses applicable to all members as a class, Defendant acknowledges that these issues can be determined as an issue common to the class. *See Gee v. Suntrust Mortgage, Inc.,* No. C-10-1509-RS, 2011 WL 722111, at *3 (N.D. Cal. Feb 18, 2011) ("Uniform exemption classifications and other "standardized corporate policies and procedures," still represent relevant factors in evaluating class certification, as they may indicate that employees' job duties are similar.).

### C. Employment status is a merits-based analysis and is premature at the notice stage.

KWS may also argue that White and Shaw have not met the economic realities test to show SCCs are misclassified as independent contractors. That argument goes to the merits of the case. Courts regularly recognize that there is an inadequate record at the certification stage to apply economic realities factors and these factors go to the ultimate issues, not whether notice should issue under the lenient similarly situated analysis. *Prejean v. O'Brien's Resp. Mgmt., Inc.*, Nos. 12-1045, 12-1716, 12-1533, 2013 WL 5960674, at *7-8 (E.D. La. Nov. 6, 2013) ("[S]uch an inquiry [under the economic realities test] is better addressed at the decertification stage after discovery has occurred[.]"); *Scovil v. FedEx Ground Package Sys., Inc.*, 811F.Supp.2d 516, 519 (D. Me. 2011) ("I will have to deal with the economic realities factors conclusively when I determine ultimately whether the drivers are employees

or independent contractors, but the question for me now is simpler: whether the drivers in the proposed class are similarly situated.").

KSW will likely argue that *Christianson v. NewPark Drilling Fluids, LLC,* will require this Court to apply the economic realities test at the lenient, first stage of the conditional certification inquiry. *Christianson v. NewPark Drilling Fluids, LLC*, Civ. A. No. H-14-3235, 2015 WL 1268259, at *4 (S.D. Tex. Mar. 19, 2015)(J. Atlas). However, as Judge Atlas later clarified, "this Court did not apply the economic realities test *per se* in *Christianson.* Rather, the Court assessed whether the proposed class members were sufficiently similarly situated because they were subject to a single policy or practice of the employer. The assessment was whether the Court would be able to apply the economic realities test, at a later stage in the litigation, to the proposed class as a group, or whether the circumstances of the members of the proposed class were so divers as to eviscerate [ ] all notions of judicial economy that would otherwise be served by conditional class certification." *Vaughn v. Document Grp. Inc.,* 250 F. Supp. 3d 236, 242-43 (S.D. Tex. 2017) (internal quotations omitted); *see also Kibodeaux v. Wood Group Prod. and Consulting Servs., Inc.,* Civ. A. No. 4:16-CV-3277, 2017 WL 1956738, at *3 (S.D. Tex. May 11, 2017)(explaining the economic realities test argument is a merits-bases argument, and courts are not to engage in merits-based analysis at the notice stage of a collective action).

Here, White and Shaw have shown, *inter alia*: (a) KSW controlled putative class members; (b) KSW set the rates of pay; (c) KSW makes all the relevant investments in tools and equipment; (d) KSW determines the (lack of) opportunity for profit or loss; and (e) specialized skills are not necessary. *See generally* Exs. 1-2.

Courts do not consider the merits of the classification decision because "even if Plaintiffs' claims turn out to be meritless or, in fact all Plaintiffs turn out not to be similarly situated, notification at this stage, rather than after further discovery, may enable more efficient resolution of the underlying issues in the case." *See Krueger v. New York Tel. Co.*, No. Civ. A. 93 CIV. 0178, 1993 WL 276058, at *2

(S.D.N.Y. Jul. 21, 1993); *see also Harper v. Lovett's Buffet, Inc.*, 185 F.R.D. 358, 365 (M.D. Ala. 1999) ("[S]ubsequent discovery may reinforce or undermine th[e] finding [that the class is similarly situated.]"). Any argument as to whether SCCs are employees or independent contractors should thus be rejected because such arguments go to the merits of this case.

### D. The statute of limitations is running on Putative Class Members' valuable and viable claims.

Unlike Rule 23 class actions where the statute of limitations is tolled with the filing of the complaint, the statute of limitations under the FLSA is not tolled until plaintiffs file their written consent to join the action with the court. 29 U.S.C. § 216(b) ("No employee shall be a party to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."). Although the notice process does not stop the statute of limitations, at a minimum, it does notify the Putative Class Members that the case is ongoing and the statute of limitations is running on their claims. *Fisher v. Michigan Bell Telephone Co.*, C.A. 2:09-cv-10802, 2009 WL 3427048, at *8 (E.D. Mich. Oct. 22, 2009). Thus, White and Shaw's motion should be granted and notice should be issued

### 4. Relief sought.

To facilitate the Notice process and preserve the rights of those who have not yet opted-in, White has attached a proposed Notice and Consent forms for approval by the Court, which have been adopted by courts across the United States. *See* Ex. 3. White and Shaw also propose a notice schedule in the attached Proposed Order.

### A. The production of contact information is routine in FLSA collective actions.

White and Shaw also request the Court order KSW to provide his Counsel with the names, last known home addresses, email addresses, phone numbers, and dates of employment for all Putative Class Members. Courts routinely require this information and allow the issuance of notice through

11

the requested conduits. *See, e.g., See Rodriguez v. Stage 3 Separation, LLC*, No. 5:14-cv-603-RP, Order Granting Cond. Class Cert. and Notice [Doc. 57], at *2 (W.D. Tex. Mar. 16, 2015) (Pitman, D.J.) ("The Court notes that in 2015 it should rarely be entertaining arguments about the appropriateness of email notice. Email is not the wave of the future; email is the wave of the last decade and a half. **Many people use their email address as their primary point of contact, and in almost every situation, more opt-in plaintiffs will be on notice of a pending collective action if the potential class members are also notified via email**."); *Dyson v. Stuart Petroleum Testers, Inc.*, 308 F.R.D. 510, 517 (W.D. Tex. 2015) (ordering production of names, addresses, email addresses, and phone numbers). The production of email addresses is particularly important because SCCs work for long periods of time in remote locations making it difficult (or even impossible) to regularly receive mail. Accordingly, email is one of their primary methods of communication and necessary to ensure they receive the notice.

The Southern District of Texas concurs: "[T]he Court finds that notice by e-mail will more likely reach potential class members than regular mail sent to the home address …." *Jaso v. Bulldog Conn. Specialists LLC*, No. 2:15-cv-269, Memo & Order on Pls' Mtn. for Cond. Cert. [Doc. 17], at *12 (S.D.Tex. Oct. 15, 2015). And other districts within the Fifth Circuit have routinely ordered email notice. *E.g.*, *Zook v. W&W Energy Svcs., Inc.*, No. 7:15-cv-00201-RAJ-DC, Order Granting Pl's Mtn. for Cond. Cert. [Doc. 21], at *7 (W.D. Tex. May 5, 2016); *Crow v. ProPetro Svcs., Inc.*, No. 7:15-cv-00149-RAJ-DC, Order Granting Pl's Mtn. for Cond. Cert. [Doc. 33], at *11 (W.D. Tex. May 4, 2016); *Vassallo v. Goodman Networks, Inc.*, No. 4:15-cv-97, 2015 WL 3793208, at *8 (E.D. Tex. Jun. 17, 2015); *Boudreaux v. Schlumberger Tech. Corp.*, No. 6:14-cv-2267, Doc. 50 (W.D. La. Feb. 25, 2015) (Hill, Mag.); *Tice v. AOC Senior Home Health Corp.*, 826 F.Supp.2d 990, 998 (E.D. Tex. 2011). The Western District of Texas has even expressly ordered the production of **any and all** email addresses (work and personal) maintained by an employer. *Beall v. Tyler Technologies, Inc.*, No. Civ. A. 2-08-CV-422, 2009 WL 3064689, at *1-2

(E.D. Tex. Sept. 23, 2009). The use of both emailed notice and electronic signatures ("e-signatures") serves to make the notification and op-in process faster and easier. *See, e.g.*, *White*, 2013 WL 2903070, at *8; *Dyson v. Stuart Petroleum Testers, Inc.*, 308 F.R.D. 510, 516-18 (W..D. Tex. 2015) (collecting cases). In all, courts within this Circuit have accepted email notice as routine in FLSA collective actions such as this. In addition to the sources cited *supra*, *see Dyson*, 308 F.R.D. at 517; *Moore v. Bottom Line Svcs., LLC*, No. 2:13-cv-121, Order on Pl.'s Mtn. for Notice to Pot. Class Mems. [Doc. 26], at *1 (S.D. Tex. Nov. 14, 2013); *Gonyer v. Allied Transp. Co.*, No. 2:13-cv-267, Order on Pls' Mtn. for Cond. Cert. [Doc. 85], at *2 (S.D. Tex. Jun. 11, 2014); *Durbin v. Advanced Pipeline Svcs., LLC*, No. 13-cv-0136, Order on Pl.'s Mtn. for Notice to Potential Class Mems. [Doc. 34], at *1 (S.D. Tex. Jan. 13, 2014); *see also Pacheco v. Aldeeb*, Cv. No. 5:14-CV-121-DAE, 2015 WL 159570, at *9 n.4 (W.D. Tex. Mar 31, 2015)(approving notice by email and Facebook message).

**B.    Plaintiffs' Counsel should be allowed telephone follow-up for undeliverable mail.**

White and Shaw request that the certification schedule in this matter accommodate the follow-up of Putative Class Members by telephone if they are former employees or if the mailed or emailed Notice and Consent Forms are undeliverable. *See* Ex. 6, Proposed Tel. Scripts. Employees who have left the employment of a company frequently do not provide that former employer with up-to-date contact information. *See Lopez v. WS Energy Svcs., LLC*, No. 2:15-cv-135, Order on Pls' Opp. Mtn. for Notice to Pot. Class Mems. [Doc. 33], at *3 (S.D. Tex. Oct. 15, 2015). For this reason, White and Shaw request that the certification schedule accommodate follow-up telephone calls by Class Counsel to those Putative Class Members who are former employees or whose contact information, during the course of the class certification schedule, is shown to be incorrect or no longer valid.

**D.    KSW's communications with SCCs about the lawsuit should be prohibited.**

The FLSA expressly prohibits a Defendant or its Counsel from dissuading Putative Class

Members from exercising their rights. 29 U.S.C. § 215(a)(3). White and Shaw specifically request the Court's order granting this Motion state the following: Defendant is hereby prohibited from communicating, directly or indirectly, with any current or former employees about any matters which touch or concern the settlement of any outstanding wage claims, or other matters related to this suit, during the opt-in period. Defendant shall so instruct all of its managers. This Order shall not restrict Defendant from discussing with any current employee matters that arise in the normal course of business. *See Benzon v. National Oilwell Varco, LP*, C.A. No. 4:14-cv-2582, Order Granting Pl's Mtn. for Cond. Cert. [Doc. 33] (S.D. Tex. Jun. 18, 2015) (approving nearly identically worded order); *Barnard v. Intertek USA Inc.*, C.A. No. 4:11-cv-2198, Order Granting Pls' Mtn. for Cond. Cert. [Doc. 99] (S.D. Tex. May 2, 2012) (same); *Alba v. Madden Bolt Corp.*, C.A. No. 4:02-cv-1503, 2002 WL 32639827, at *1 (S.D. Tex. Jun. 5, 2002) (same).

**5.     Conclusion**

White and Shaw have more than met the lenient standard for conditional certification. In order to facilitate the purposes of the FLSA's collective action provisions, White and Shaw respectfully request that the Court grant this motion and (1) conditionally certify this action for purposes of notice and discovery; (2) order that a judicially approved notice be sent to all Putative Class Members by mail and email; (3) approve the form and content of Plaintiffs' proposed judicial notice and reminder notice; (4) order KSW to produce to Plaintiffs' Counsel the last known name, address, phone number, email address and dates of employment for each of the Putative Class Members in a usable electronic format; (5) authorize Plaintiffs' Counsel to send by mail and e-mail a Reminder Postcard to the Putative Class Members reminding them of the deadline for the submission of the Consent forms; (6) authorize Plaintiffs' Counsel to follow up with all those Putative Class Members who have not returned their Consent forms with a phone call to ensure receipt of the Notice packet; and (7) authorize a sixty (60) day notice period for the Putative Class Members to join this case.

Respectfully submitted,

By: */s/ Andrew W. Dunlap*
    **Michael A. Josephson**
    State Bar No. 24014780
    **Andrew W. Dunlap**
    State Bar No. 24078444
    **JOSEPHSON DUNLAP LAW FIRM**
    11 Greenway Plaza, Suite 3050
    Houston, Texas 77005
    713-352-1100 – Telephone
    713-352-3300 – Facsimile
    mjosephson@mybackwages.com
    adunlap@mybackwages.com

    **AND**

    **Richard J. (Rex) Burch**
    State Bar No. 24001807
    **BRUCKNER BURCH PLLC**
    8 Greenway Plaza, Suite 1500
    Houston, Texas 77046
    713-877-8788 – Telephone
    710-877-8065 – Facsimile
    rburch@brucknerburch.com

    **ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule 7.1 (D)(1), I hereby certify that counsel for the movant has conferred with counsel for the Defendant in a good faith effort to resolve the issues. Counsel for Defendant is **opposed** to this motion.

*/s/ Andrew W. Dunlap*
**Andrew W. Dunlap**

## CERTIFICATE OF SERVICE

I served a copy of this document on all counsel of record via the Court's ECF system on September 14, 2018.

*/s/ Andrew W. Dunlap*
**Andrew W. Dunlap**