**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **PAUL A. WHITE and JAMES SHAW** | § | |
| **individually and on behalf of those similarly** | § | |
| **situated,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| | § | **CIVIL ACTION NO. 4:18-cv-01983** |
| **v.** | § | |
| | § | **COLLECTIVE ACTION** |
| **KSW OILFIELD RENTAL, LLC;** | § | **29 U.S.C. § 216(b)** |
| **and DUPRE ENERGY SERVICES, LLC,** | § | |
| | § | |
| | § | |
| **Defendants.** | § | |

**DEFENDANTS KSW OILFIELD RENTAL, LLC AND DUPRE
ENERGY SERVICES, LLC'S RESPONSE TO PLAINTIFFS'
OPPOSED MOTION FOR CONDITIONAL CERTIFICATION
AND FOR NOTICE TO PUTATIVE CLASS MEMBERS**

TABLE OF CONTENTS

**Page**

I.     Introduction and Summary of Argument ............................................................. 1

II.    Procedural Background .................................................................................... 3

III.   Factual Background ........................................................................................ 3

IV.    Arguments and Authorities .............................................................................. 6

      A.   Conditional Certification is not automatic, and Plaintiffs bear the burden
           to prove it is warranted. ............................................................................. 6

      B.   Conditional Certification is inappropriate because the Plaintiffs and the
           Putative Class Members are not similarly situated. ....................................... 8

           1.   Plaintiffs and the Putative Class Members are not employees of
                Defendants; therefore, they cannot be similarly situated........................... 8

           2.   Plaintiffs' identical and conclusory declarations do not provide the
                required evidence to support conditional certification............................ 12

           3.   Plaintiffs fail to provide evidence establishing that the putative
                class members are victims of a common policy or practice of
                Defendants that violated the law.......................................................... 16

      C.   Defendants lack the information necessary to identify the members of the
           proposed class, making conditional certification inappropriate. ..................... 18

      D.   Dupre is not a proper party to this suit.................................................... 18

      E.   Plaintiffs' proposed notice is improper in several material aspects.................... 19

      F.   Plaintiffs' proposed limitations period is improper. ................................... 21

V.     Conclusion ................................................................................................ 22

i

TABLE OF AUTHORITIES

**Cases**                                                                                              **Page(s)**

*Aguilar v. Complete Landsculpture, Inc.*,
  No. Civ. A 3:04-CV-0776 D, 2004 WL 2293842 ..............................................................19, 20

*Altiep v. Food Safety Net Servs., Ltd.*,
  No. 3:14-CV-00642-K, 2014 WL 4081213 (N.D. Tex. Aug. 18, 2014) ..........................19, 20

*Andel v. Patterson-UTI Drilling Co., LLC*,
  280 F.R.D. 287 (S.D. Tex. 2012) .................................................................................7, 10, 12

*Badgett v. Tex. Taco Cabana, L.P.*,
  No. H-05-3624, 2006 WL 2934265 (S.D. Tex. Oct. 12, 2006) .............................................6, 7

*Barnes v. Abandonment Consulting Services.*
  No. 12-cv-1399, 2013 WL 3884198 (S.D. Tex. July 26, 2013) ........................................15, 16

*Botello v. COI Telecom, LLC*,
  No. 10-CV-305-XR, 2010 WL 5464824 (W.D. Tex. Dec. 30, 2010) ......................................17

*Ceuric v. Tier One, LLC d/b/a Tier 1 Rental and Dist.*,
  No. 2:17-cv-01240 (W.D. Pa. Sept. 24, 2017) ...................................................................2, 14

*Christianson v. NewPark Drilling Fluids, LLC*,
  2015 WL 1268259 (S.D. Tex. March 19, 2015) (Atlas, J)
  .................................................................................................................................9, 10, 11, 12

*Demauro v. Limo, Inc.*,
  No. 10-413, 2011 WL 9191 (M.D. Fla. Jan. 3, 2011) ...........................................................11

*Humphries v. Stream Int'l, Inc.*,
  No. 3:03-cv-1682-D, 2004 U.S. Dist. LEXIS 20465 (N.D. Tex. Oct. 7, 2004) .....................19

*Johnson v. Heckmann Water Resources (CVR), Inc.*
  78 F.3d 627 (5th Cir. 2014) ...............................................................................................8, 9

*Jones v. Cretic Energy Servs.*,
  LLC, 149 F. Supp. 3d 761 (S.D. Tex. 2015) ......................................................................7, 16

*Ledbetter v. Pruitt Corp.*,
  No. 05-cv-329, 2007 WL 496451 (M.D. Ga. Feb. 12, 2007) ...................................................2

*Lusardi v. Xerox Corp.*,
  118 F.R.D. 351 (D.N.J. 1987) ...................................................................................................6

*McKnight v. D. Houston, Inc.*,
  765 F. Supp2d 79 (S.D. Tex. 2010) ...............................................................................12, 17

ii

*McLaughlin v. Richland Shoe Co.*,
  486 U.S. 128 (1988)................................................................................22

*Mooney v. Aramco Servs. Co.*,
  54 F.3d 1207 (5th Cir. 1995), *overruled on other grounds, Desert Palace, Inc.*
  *v. Costa,* 539 U.S. 90, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003)................................12

*Morales v. Thang Hung Corp.*,
  No. 4:08-2795, 2009 WL 2524601 (S.D. Tex. Aug. 14, 2009) ................................12

*Nieddu v. Lifetime Fitness, Inc.*,
  977 F. Supp. 2d 686 (S.D. Tex. 2013) ................................................................6, 7

*Rappaport v. Embarq Mgmt. Co.*,
  No. 6:07-cv-486-Orl-19DAB, 2007 WL 4482581 (M.D. Fla. Dec 18, 2007)..........................7

*Rueda v. Tecon Servs., Inc.*,
  No. 10-4937, 2011 WL 2566072 (S.D. Tex. June 28, 2011)................................16

*Shanks v. Carrizo Oil & Gas, Inc.*,
  Civil Action No. 4:12-CV-3355, 2013 WL 6564636 (S.D. Tex. Dec. 11, 2013)........13, 14, 15

*Sisson v. OhioHealth Corp.*,
  No. 2:13-CV-0517, 2013 WL 6049028 (S.D. Ohio Nov. 14, 2013) ........................7

*Symczyk v. Genesis HealthCare Corp.*,
  656 F. 3d 189 (3rd Cir. 2011), *rev'd on other grounds*, 569 U.S. 22 (2013) ........................12

*Vasquez v. Am. Bor-Trench, Inc.*,
  No. 12-3181, 2014 WL 297414 (S.D. Tex. Jan. 23, 2014)....................................16

**Statutes**

29 U.S.C. § 207(a)(1)................................................................................8

29 U.S.C. § 216(b)................................................................................1, 6

29 U.S.C. § 255(a) ................................................................................22

Fair Labor Standards Act ................................................................................21

FLSA................................................................................*passim*

Plaintiffs' Fair Labor Standards Act ................................................................................2

**Other Authorities**

Federal Rule of Civil Procedure 23 ................................................................................7

iii

Defendants KSW Oilfield Rental, LLC ("KSW") and Dupre Energy Services, LLC ("Dupre") (collectively, "Defendants") hereby submit this Response to the Opposed Motion for Conditional Certification and for Notice to Putative Class Members filed by Plaintiffs Paul A. White and James Shaw (collectively, "Plaintiffs") and would respectfully show the Court the following:

## I.     INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiffs have moved this Court to conditionally certify this case as a collective action under 29 U.S.C. § 216(b) on behalf of Plaintiffs and others "similarly situated." However, Plaintiffs' Opposed Motion for Conditional Certification and for Notice to Putative Class Members (the "Motion") is fatally flawed for each of the foregoing reasons:

First, in an effort to maintain a class, Plaintiffs misstate and oversimplify the legal standard. While the standard of conditional certification is lenient, it is not automatic and Plaintiffs still must meet their burden of proof—which they have failed to do.

Second, Plaintiffs conveniently omit one extremely important fact—that Defendants were not the Plaintiffs' employers. Plaintiffs disingenuously characterize Defendants as their employer and wholly omit the fact that they have already elicited a settlement from their *actual* employer, Tier One LLC ("Tier One").

Third, Plaintiffs fail to offer the evidence necessary to establish that Plaintiffs and the putative class members are "similarly situated"—a threshold requirement for conditional certification. "[T]o conclude that an employee may establish the 'similarly situated' requirement simply by claiming violations of the law by the same employer, would be to conclude that any time employees allege unpaid overtime due to the same employer, such employees would be 'similarly situated' and be allowed to proceed with a collective action. Such a result is counter to the requirements that plaintiffs make substantial and detailed allegations . . . that the plaintiff and

1

the potential collective action members are 'similarly situated.' " *Ledbetter v. Pruitt Corp.*, No. 05-cv-329, 2007 WL 496451, at *5 (M.D. Ga. Feb. 12, 2007).

Fourth, Plaintiffs' Motion should be denied because Plaintiffs lack proper evidence that conditional certification is warranted. Plaintiffs rely solely on *identical* imprecise declarations amounting to nothing more than conclusory, speculative, unsupported and cursory allegations. Plaintiffs' declarations fail to provide *any* personal knowledge regarding the circumstances of the putative class members' employment, which is required to certify a class.

Finally, Plaintiffs not only fail to articulate the actual connection between Defendants and Plaintiffs' employer (Tier One), but disingenuously fail to disclose that they previously opted into a separate lawsuit and obtained a settlement on the exact same claim that is the subject of this case.[1] In that suit, the plaintiff and the opt-in members (including Plaintiffs) alleged that Tier One—their employer—misclassified them as independent contractors and failed to pay them overtime.[2] Placing the Complaint in this lawsuit side-by-side with the complaint in the *Tier One* lawsuit reveals that Plaintiffs' Fair Labor Standards Act ("FLSA") allegations against Defendants are not separate and distinct from the allegations in the *Tier One* lawsuit, but arise from same nucleus of operative facts. After eliciting a settlement and releasing the claims against their actual employer, Plaintiffs now attempt to circumvent the system by double dipping in recovery.

For these reasons, and for the reasons set forth more fully below, Plaintiffs have failed to meet their burden entitling them to conditional certification, and their Motion should be denied.

---

[1] *See Ceuric v. Tier One, LLC d/b/a Tier 1 Rental and Dist.*, No. 2:17-cv-01240 (W.D. Pa. Sept. 24, 2017) (suit also involving Plaintiffs' counsel in this case).
[2] *See id.*

6852533

## II.   PROCEDURAL BACKGROUND

On June 15, 2018, Plaintiffs filed their Collective Action Complaint (the "Complaint") alleging, on behalf of themselves and others allegedly similarly situated, various violations of the FLSA. On July 27, 2018, Defendants answered the Complaint, denying the Plaintiffs' allegations and specifically denying that they ever employed Plaintiffs or anyone "similarly situated" to them. On September 14, 2018, Plaintiffs filed their Motion seeking conditional certification for "all current and former Solids Control Consultants that worked for or on behalf of KSW Oilfield Rentals, LLC and Dupre Energy Services, LLC who were classified as independent contractors and paid a day-rate during the last three (3) years ('Putative Class Members')." Plaintiffs' Complaint at ¶ 15. However, Plaintiffs have failed to offer sufficient evidence to satisfy even the lenient burden entitling them to conditional certification. As set forth in detail below, Plaintiffs' Motion should be denied.

## III.   FACTUAL BACKGROUND

From the outset, it is important to note that Plaintiffs were employed by Tier One, as acknowledged in the separate lawsuit they settled with Tier One addressed above. KSW has a Master Service Agreement with Tier One, a staffing company that KSW would use from time to time for Solids Control Consultants. Exhibit A, Declaration of T. Williams, at ¶2. Dupre, an affiliate of KSW, does not and did not have a Master Service Agreement with Tier One or any other staffing company regarding Solids Control Consultants. *Id.* Dupre is not a proper defendant in this lawsuit because it never utilized the services of or worked with Plaintiffs or other Solids Control Consultants. *See id.*

KSW is an industry leader in Wellsite Fluid Handling Equipment for the re-use and reduction of fluid volumes. Ex. A at ¶ 3.  KSW provides rental equipment and manpower for fluid

6852533

management and solids control in the oil and gas industry and offers solutions in solids control and waste management, dewatering, fluids management, and rig vacs and transfer pumps. *Id.*

KSW operates across locations in Oklahoma, Pennsylvania, and Texas. *Id.* at ¶ 4.  At times in the various locations and on different customer projects, KSW uses third-party staffing companies ("Vendors"), like Tier One, to obtain solids control consultants, such as Plaintiffs, to assist KSW on an as-needed basis. *Id.* at ¶ 5. The Vendors provide these Consultants pursuant to a Master Service Agreement ("MSA") entered into and negotiated by KSW and the particular Vendor. *Id.*   The Consultants work in different states, at different customer locations, and on different projects that KSW handles for its customers. *Id.* at ¶ 4. There are different customer representatives and KSW personnel working at the various locations. *Id.* Consultants have varying responsibilities and job duties based on the location and job site where they are working. *Id.*

During the applicable time period, KSW has contracted with eight different Vendors for Consultants. *Id.* at ¶ 5. These Vendors include: Tier One; DCS All American, LLC; Five Star; DWM Consulting LLC; Dimension; BKD Consulting; Express Services, Inc.; and Eastwood Oilfield Consulting Services LLC. *Id.* Although the contract terms vary from Vendor to Vendor, each party unequivocally agrees that the ***Vendor*** must comply with all potentially applicable laws, including employment laws. *Id.* Vendors are solely responsible for classifying the Consultants under the FLSA, paying the Consultants, determining how the Consultants are paid and when, and setting other terms of the Consultant's compensation. *Id.*  KSW does not even know if the Vendors' employees, including Consultants, are paid day rates. *Id.* KSW understands that different Vendors pay their employees different amounts through different structures. *Id.* KSW never directly paid Plaintiffs or any other Consultants because it never employed them. *Id.*

4

By way of example, KSW has a MSA with Tier One, the Vendor that furnished the Plaintiffs to KSW. Ex. A at ¶ 6. The MSA is clear that Plaintiffs (and other Consultants provided by Tier One) are ***not*** employees of KSW and that KSW does not have the right to direct or control Tier One's employees. In relevant part, the MSA includes the following provisions:

INDEPENDENT CONTRACTOR.

A.   CONTRACTOR shall be an independent contractor with respect to the performance of all work and services hereunder, and ***neither CONTRACTOR, nor anyone employed by CONTRACTOR, shall be deemed for any purpose to be the employee, agent, servant or representative of COMPANY in the performance of any work or services***, or part thereof, in any matter dealt with herein.  COMPANY shall have no direction or control of CONTRACTOR or its employees, agents or subcontractors, except in the results obtained.  The work contemplated herein shall meet the approval of COMPANY and be subject to the general right of inspection by COMPANY to secure the satisfactory completion thereof.  The actual performance and supervision of all work and services contemplated herein shall be by CONTRACTOR, but COMPANY or its representatives shall have reasonable access to the operations to determine whether the work and services being performed by CONTRACTOR are in accordance with all provisions of this Agreement and applicable work and purchase orders.

B.   CONTRACTOR shall primarily be responsible for and shall pay for all workers' compensation benefits to any of CONTRACTOR's employees.

CONTRACTOR'S PERSONNEL

COMPANY and CONTRACTOR agree that ***COMPANY shall no right to terminate, discharge, discipline, or affect any other term of condition of employment of any employee of CONTRACTOR.***  Any decision to terminate, discharge, discipline, or otherwise effect any other term or condition of employment of any employee of CONTRACTOR shall be the sole act of CONTRACTOR and COMPANY shall have no liability therefore."

Exhibit B, the MSA between KSW and Tier One, at ¶¶ 11-12 (emphasis added); Ex. A at ¶ 6.

The MSA provides that Tier One has complete control over the detail, manner, and method of performing the work and services. Ex. B at p. 1

5

As demonstrated in the MSA with Tier One, it is the Vendors—not KSW—who employ the Consultants. Ex. A at ¶ 6.  It is the Vendors—not KSW—who determine the amount and manner by which the Vendor pays its Consultants. *Id.* KSW has no knowledge of the pay structure and pay arrangements between the Vendors and the Consultants or numerous other terms of the conditions of their employment with the Vendors. *Id.* Nor does KSW maintain the employment and pay records for the Consultants, including those of Plaintiffs White and Shaw. *Id.* KSW typically receives only timesheets regarding the Consultants with the Vendors' invoices. *Id.*

Although it is undisputed that (1) KSW contracts with at least 8 different Vendors, each with separate MSAs, (2) KSW operates in several different locations across 3 states, each with varying jobs and customer projects, and (3) KSW has no involvement in the pay structure and compensation of Consultants, Plaintiffs nevertheless attempt to certify an overly broad class based on one similarity between the Consultants, their job title. In addition, Plaintiffs have already participated in and settled a case against Tier One with identical claims related to any services they may have performed for KSW as employees of Tier One.

### IV.   ARGUMENTS AND AUTHORITIES

### A.   Conditional Certification is not automatic, and Plaintiffs bear the burden to prove it is warranted.

Section 216(b) of the FLSA authorizes an individual plaintiff to bring a lawsuit on "behalf of himself . . . and other employees similarly situated." 29 U.S.C. § 216(b). The plaintiff bears the burden of proving that conditional certification of a class is warranted. *Badgett v. Tex. Taco Cabana, L.P.*, No. H-05-3624, 2006 WL 2934265, at *1-2 (S.D. Tex. Oct. 12, 2006). When considering whether to certify a lawsuit under the FLSA as a collective action, courts in the Fifth Circuit generally use the two-stage *Lusardi* approach. *See Nieddu v. Lifetime Fitness, Inc.*, 977 F. Supp. 2d 686, 690 (S.D. Tex. 2013) (citing *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987)).

6

The first step under *Lusardi* is the "notice stage," which occurs before the parties have conducted substantial discovery, and requires the court to determine whether to conditionally certify a class and issue notice to potential class members. *Nieddu*, 977 F. Supp. 2d at 690.

At the first stage, as here, the plaintiff bears the burden of showing that (1) there is a reasonable basis for crediting the assertions that aggrieved individuals exist; and (2) that those aggrieved individuals are similarly situated to the plaintiff in relevant respects given the claims and defenses asserted.[3] *Id*. In determining whether the plaintiff meets this threshold, courts examine whether there are "**substantial allegations** that the potential members were together the victims of a **single** decision, policy, or plan of the employer." (emphasis added). *Andel v. Patterson-UTI Drilling Co., LLC*, 280 F.R.D. 287, 289 (S.D. Tex. 2012).

While the standard at the initial notice stage is more lenient than that for a class under Federal Rule of Civil Procedure 23, conditional certification "is **not** automatic." *Badgett,* 2006 WL 2934265, at *1-2. The plaintiff "must present some evidence to support allegations that others are similarly situated" and establish a "colorable basis" for his claim that others are "similarly situated" before the employer should be subjected to the burden of a collective action. *Sisson v. OhioHealth Corp.,* No. 2:13-CV-0517, 2013 WL 6049028, at *2 (S.D. Ohio Nov. 14, 2013). Further, a conditional certification and court-authorized notice should not function as a mere fishing expedition. *See Rappaport v. Embarq Mgmt. Co.,* No. 6:07-cv-486-Orl-19DAB, 2007 WL 4482581 (M.D. Fla. Dec 18, 2007). Plaintiffs fail to provide the required evidence to meet even the lenient burden entitling them to conditional certification; and therefore, conditional certification should be denied.

---

[3] Some courts within this District also require a plaintiff to establish that alleged "similarly situated" individuals desire to opt in to the case. However, because conditional certification is inappropriate under the first two notice-stage factors, analysis of whether others desire to opt in is unnecessary. *See Jones v. Cretic Energy Servs.*, LLC, 149 F. Supp. 3d 761, 768 (S.D. Tex. 2015).

6852533

**B.      Conditional Certification is inappropriate because the Plaintiffs and the Putative Class Members are not similarly situated.**

Plaintiffs are not similarly situated to other proposed class members. Plaintiffs fail to satisfy the similarly situated threshold for each of the following reasons:

**1.      Plaintiffs and the Putative Class Members are not employees of Defendants; therefore, they cannot be similarly situated.**

The first element in establishing a *prima facie* violation of the FLSA is a showing of the existence of an employment relationship. The FLSA provides that "no ***employer*** shall ***employ*** any of his ***employees*** . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."  29 U.S.C. § 207(a)(1) (emphasis added). Thus, the overtime requirements of the FLSA apply only to "employers" who "employ" "employees." *See id.*

"An employee bringing an action for unpaid overtime compensation must first demonstrate by a preponderance of the evidence: (1) that there existed an employer-employee relationship during the unpaid overtime periods claimed; (2) that the employee engaged in activities within the coverage of the FLSA; (3) that the employer violated the FLSA's overtime wage requirements; and (4) the amount of overtime compensation due." *Johnson v. Heckmann Water Resources (CVR), Inc.* 78 F.3d 627, 630 (5th Cir. 2014).

Here, there is not and never has been an employee-employer relationship between Plaintiffs—or the other Consultants—and KSW or Dupre. Ex. A at ¶ 7. The Plaintiffs only provided services for KSW pursuant to the MSA between their employer, Tier One, and KSW. *Id.* The MSA makes it clear that Plaintiffs and other Consultants remain employed by Tier One, not KSW. *Id.* KSW never made any payments directly to Plaintiffs or the other Consultants—Tier One and the other Vendors paid the Consultants and KSW did not have any input into the method or

8

amount of the Vendors' employees' compensation. *Id.* Dupre has not even interacted with Plaintiffs or the other Consultants and they never performed any work related to Dupre. *Id.*

In cases such as this, where the plaintiffs allege independent contractor misclassification, courts in this district, including this very court, have held that they must analyze, at this first stage, whether the plaintiff demonstrated that the putative class members are similarly situated in respect to whether they were *employees* of the defendant. *See Christianson v. NewPark Drilling Fluids, LLC,* 2015 WL 1268259, at *2-3 (S.D. Tex. March 19, 2015) (Atlas, J).

In determining whether the putative class members are similarly situated employees of the defendant, courts apply the factors of the "economic realities test." *Id.* This test looks to five non-exhaustive factors: (1) the degree of control exercised by the alleged employer; (2) the extent of the relative investments of the worker and the alleged employer; (3) the degree to which the worker's opportunity for profit or loss is determined by the alleged employer; (4) the skill and initiative required in performing the job; and (5) the permanency of the relationship. *Id.* at *3.

In *Christianson*, the plaintiff alleged that the defendant, an oilfield services company, misclassified him and the putative class members as independent contractors and paid them a day rate with no overtime compensation. *Id.* at *1. At the conditional certification stage, this Court found as a preliminary matter that "a fundamental requirement of an FLSA claim is that the plaintiff be an employee of the defendant during the relevant time period." *Id.* This Court then set forth the economic realities test and determined that "the evidence on the economic reality factors varie[d] significantly among the putative class members." *Id.* at *3.  This Court held that because the factors varied significantly among the putative class members, "the future resolution of whether [the workers] who were classified as independent contractors were actually employees for the purposes of the FLSA [would] require ***individual*** analysis as to each [worker] so classified."

9

(emphasis added). *Id.* at *5. Because of the necessity of this individualized classification analysis, this Court denied the motion for conditional certification. *Id.*; *see also Andel,* 280 F.R.D. at 289 (holding that an individualized analysis precludes class certification).

Plaintiffs' Motion incorrectly suggests that Defendants will cite *Christianson* in an attempt to use the economic realities test inappropriately because "employment status is a merits based analysis and is premature at the notice stage." *See* Plaintiffs' Motion at Section 3. C. In *Christianson*, however, this Court was very clear that it was "not applying the economic realities test at [the first stage] to decide whether [the workers] were improperly classified independent contractors," but instead was "evaluating whether plaintiff demonstrated that he and the putative class members were similarly situated for the purposes of applying the economic realities test at the appropriate phase of [the] case in the future." *Christianson* 2015 WL 1268259 at *4.  While it is correct that the court does not weigh or adjudicate the merits at the initial conditional certification stage, here, like in *Christianson*, the Court need not make a determination on the ultimate merits to make an initial determination of whether the putative class members are *employees* of Defendants.

Here, the facts are similar to those presented in *Christianson*, thus conditional certification is similarly inappropriate. As in *Christianson*, Consultants have varying responsibilities and job duties based on the location of the job site where they are working. Ex. A at ¶ 4. Some of the Consultants work only sporadically on KSW projects, while others work significantly more days on KSW projects. *Id*. Many of these factors are dependent on the geographic location or the customer that KSW is working for. *Id.*

Applying the factors of the economic reality test make it clear that Plaintiffs and the putative class members are not similarly situated.  KSW does not have control over how

Consultants are compensated. *Id.* at ¶ 7. The MSA with Tier One and other Vendors provides that the Vendor has complete control over the detail, manner, and method of performing the work and services. Ex. B at p.1. The Consultants are expected to have sufficient experience and knowledge to work independently when performing services related to KSW projects. Ex. A at ¶8.  The Vendors' employees perform the work pursuant to the MSAs, and KSW has access to and general oversight of the operations. *Id.*

KSW does not have the right to require a Vendor to hire or fire Consultants. *Id.* KSW has no obligation to utilize any of the Vendors' Consultants for any length of time or at all. *Id.* KSW is free to choose among the Vendors and use their Consultants only on an as-needed basis when additional help is needed due to KSW's workload. *Id.* Finally, like the proposed class in *Christianson*, the putative class members' opportunities for profit and loss differ greatly, with varying day rates and compensation structures based on the Vendor/employer, project details, and geographic location. *Id.* Due to the varying factors between Consultants and especially between Consultants across numerous Vendors, any future resolution of the alleged misclassification of Consultants will require individual analysis as to each Consultant so classified. Accordingly, conditional certification is not appropriate.

Defendants emphasize that a merit-based assessment of the economic realities test is not requested at this stage. However, the similarly situated standard must nevertheless be assessed with the economic realities factors in mind. *See Demauro v. Limo, Inc.*, No. 10-413, 2011 WL 9191, at *3 (M.D. Fla. Jan. 3, 2011) (noting the economic realities factors must be examined in some capacity at the conditional certification phase because "class certification issues cannot be decided in a vacuum"). Like the plaintiffs in *Christianson*, the Plaintiffs' circumstances here are too dissimilar with respect to the how these factors will later need to be analyzed for FLSA

6852533

applicability purposes. Accordingly, the need for individual analysis "eviscerates all notions of judicial economy that would otherwise be served by conditional class certification." *Christianson*, 2015 WL 1268259, at *4; *see also Andel*, 280 F.R.D. at 290 (denying class certification because the differences among plaintiffs would require individualized analysis that "would contravene a primary purpose behind class action lawsuits, *i.e.,* the promotion of judicial economy").

> ### 2.   Plaintiffs' identical and conclusory declarations do not provide the required evidence to support conditional certification.

Plaintiffs fail to offer competent evidence to support the allegation that the putative class members are similarly situated. Certification should be denied if the action arises from circumstances purely personal to the plaintiff, and not from any generally applicable rule, policy, or practice affecting all putative class members. *McKnight v. D. Houston, Inc.,* 765 F. Supp2d 79, 801 (S.D. Tex. 2010). In making this determination, Courts rely on the pleadings and affidavits of the parties and require statements in affidavits or declarations to be supported by personal knowledge. *Mooney v. Aramco Servs. Co.,* 54 F.3d 1207, 1214 (5th Cir. 1995), *overruled on other grounds, Desert Palace, Inc. v. Costa,* 539 U.S. 90, 90–91, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003). The plaintiffs may not, therefore, rely on pure speculation, but must set forth at least a modest factual showing establishing a factual nexus. *Symczyk v. Genesis HealthCare Corp*., 656 F. 3d 189, 192 (3rd Cir. 2011), *rev'd on other grounds*, 569 U.S. 22 (2013). If the plaintiff's motion for conditional certification lacks adequate evidentiary support, the motion should be denied. *See, e.g. Morales v. Thang Hung Corp.,* No. 4:08-2795, 2009 WL 2524601, at *3 (S.D. Tex. Aug. 14, 2009) ("One affidavit is not enough to establish that the collective action, along with the expensive notice it requires, is the most efficient way to proceed with this litigation. [Plaintiff] needs to show more, and unless and until he does, the court will not certify the collective action.").

12

In only one tellingly short paragraph in its Motion, Plaintiffs assert "White and Shaw meet the lenient standard for conditional certification because the evidence attached to this motion confirms the uniform nature of KSW's compensation practice and the identity of a class of similarly situated individuals. White and Shaw's evidence makes it clear that all SCCs are paid a day rate without overtime, and that they perform generally similar job duties." Plaintiffs Motion at Section 3. A. 2. Plaintiffs' speculative and conclusory statement is simply not enough to meet their burden of establishing that the employees of various Vendors are similarly situated.

In *Shanks v. Carrizo Oil & Gas, Inc.*, the court found that the plaintiff failed to establish that similarly situated individuals exist because the plaintiff's declaration did not "offer an explanation of any evidence or experience which form[ed] the basis for his conclusion." *Shanks v. Carrizo Oil & Gas, Inc.*, Civil Action No. 4:12-CV-3355, 2013 WL 6564636, at *5 (S.D. Tex. Dec. 11, 2013). The plaintiff's declaration did "not specif[y] either the job requirements or pay provisions" for the other workers, except to "say that they worked a similar number of hours, performed similar duties, and were also paid on a salary basis." *Id.*; (quoting *Goldstein v. The Children's Hosp. of Philadelphia*, No. 10-CV-01190-DS, 2012 WL 525038, at *3 (E.D. Pa. Oct. 24, 2012) ("While we can accept from plaintiff's declaration that she believes that other were 'subjected to the same . . . work policies and practices, and affected the same way by them,' she provides no indication of how she came to form this belief and, thus, whether there is a reasonable basis for it")). The court noted that "[a]ll Shanks has done to satisfy his burden at the notice stage is to submit a conclusory declaration with unsupported allegations." *Id.*

Plaintiffs' identical and unsubstantiated declarations are void of any proof that Plaintiffs have personal knowledge regarding whether the putative class members that they seek to certify are in fact "similarly situated." In an attempt to manufacture a similarly situated class, Plaintiffs

13

have, without any meaningful discussion, made conclusory statements to seemingly expand their limited personal knowledge by basing their statements on their "experiences with Defendants, my observations on location, and my conversations with co-workers." This statement does not substantively establish personal knowledge.

First, Plaintiffs only worked for *one* KSW location and only on one rig, yet Vendors provide Consultants across different states at different KSW locations. Plaintiffs do not and cannot have personal knowledge as to Consultants at other locations. Likewise, Plaintiffs were employed only by Tier One, they do not have personal knowledge of the employment circumstances for Consultants that were employed by other Vendors that the Plaintiffs never worked for. Second, as in *Shanks*, Plaintiffs' declarations do not provide a factual basis for their assertions. For instance, the declarants state that "Defendants required all of its Solids Control Consultants to adhere to strict guidelines, expectations, and directives. We did not have any independent judgment or discretion to create or stray away from established policies, practices, or regulations" (White Dec at ¶ 16; Shaw Dec. at ¶ 16) and "Defendants dictated the way I worked" (White Dec at ¶ 5; Shaw Dec. at ¶ 5). Yet, neither declarant provides any specific examples of how Defendants controlled their work, nor do they provide the basis for their conclusions, such as any instances where the work of a similarly-situated individual was "dictated", examples of policies and procedures of KSW that applied to employees of its Vendors, or any other evidence that would support these assertions.

Additionally, both declarants state that "[b]ased on my experience with Defendants, my observations on location, and my conversations with co-workers, I believe that Defendants' failure to pay individuals who received a day-rate an overtime was standard pay practice." White Dec. at ¶ 9; Shaw Dec. at ¶ 9. Neither of the declarants describe what they observed, who they observed,

14

what was disclosed in the alleged conversations, or the facts that led them to the conclusion that they were paid similarly. These statements, particularly those related to specified conversations, are unreliable hearsay. Furthermore, it is undisputed that KSW did not pay any of the Consultants directly and did not have any input into how the Vendors paid their employees. Ex. A at ¶ 7. Although KSW does not know which Vendors paid day rates and which Vendors compensated their employees in a different way, KSW understands that Vendors pay their Consultants differently. *Id.*  By way of example, Tier One has acknowledged in the other lawsuit Plaintiffs joined that they have changed their compensation methods over time and currently do not pay a day rate.

Plaintiffs attempt to gloss over the duties of individuals by stating "[a]s a Solids Control Consultant for Defendants, my primary job duties (and the primary job duties of all of the Solids Control Consultants) included…" White Dec. at ¶ 10; Shaw Dec. at ¶ 10. Yet, Plaintiffs fail to describe the facts that led them to the conclusion that *all* Consultants, who were employed by different Vendors and who worked on various projects in different locations and states, had the same primary job duties. In short, the declarations are unreliable and wholly inadequate to establish a class should be certified ***against Defendants***.

Plaintiffs' job description is similar to the plaintiff's in *Barnes v. Abandonment Consulting Services.* No. 12-cv-1399, 2013 WL 3884198, at *5 (S.D. Tex. July 26, 2013). In *Barnes,* the plaintiff worked as, among other things, a "logistics coordinator ... on various oil rigs in the Gulf of Mexico." *Id.* at * 1. The plaintiff sought certification of a class of independent contractors who were paid a day rate. *Id.* The court denied plaintiff's motion, stating:

> Although [plaintiff] alleges that each of these [putative class members] had the same job title and was paid the same daily rate, *he does not point to any evidence showing that the job locations and descriptions for each of these [putative class members] were similar to his own.*

*Id.* at *5 (emphasis added).

It is not enough to aver personal knowledge. The declarant must explain how he has personal knowledge. Without more than a conclusory statement that job duties and pay were the same for other Consultants, Plaintiffs have not met their burden to show that conditional certification is warranted.

> **3.      Plaintiffs fail to provide evidence establishing that the putative class members are victims of a common policy or practice of Defendants that violated the law.**

Courts have held that in order to be "similarly situated," Plaintiffs must show that both the plaintiff and the class members have the same or substantially similar "job requirements and pay provisions." *See Jones v. Cretic Energy Servs.*, LLC, 149 F. Supp. 3d 761, 770 (S.D. Tex. 2015); *Vasquez v. Am. Bor-Trench, Inc.*, No. 12-3181, 2014 WL 297414, at *3 (S.D. Tex. Jan. 23, 2014) (denying conditional certification of an independent contractor misclassification case when plaintiff merely alleged the other contractors were paid a flat day rate with no overtime and provided scant details as to how the class members were similar in terms of their jobs). In seeking conditional certification of a class, "[r]eports that a company [does not pay] overtime may suggest that the underpayment results from a common policy, ***but courts do not grant conditional certification without additional evidence that the plaintiffs are similarly situated***." *Rueda v. Tecon Servs., Inc.*, No. 10-4937, 2011 WL 2566072, at *5 (S.D. Tex. June 28, 2011) (emphasis added).

Plaintiffs seek to certify an overly broad class of "all current and former Solids Control Consultants that worked for or on behalf of KSW Oilfield Rentals, LLC and Dupre Energy Services, LLC who were classified as independent contractors and paid a day-rate during the last three (3) years  ('Putative Class Members')." Plaintiffs Complaint at ¶ 15.

16

Plaintiffs' proposed class would include *all* Consultants, regardless of the Vendor who employed the Consultant, and regardless of the particular Consultant's job requirements, the nature of the work provided by the particular Consultant, or the location or State where the Consultants performed services. In order to warrant certification, Plaintiffs' must present "***substantial allegations*** that the potential members were together the victims of a ***single*** decision, policy, or plan" of the employer. *McKnight*, 756 F.Supp.2d at 802. However, Plaintiffs' Motion fails to establish a causal link between *all* Consultants in the putative class and a single policy or practice by Defendants, neither of whom was the Consultants' employer.

Plaintiffs allege that "KSW did not pay [Plaintiffs] overtime…" . . . "KSW paid [Plaintiffs] and others similarly situated the same hourly rate for all days worked…" and that "this uniform pay practice applies to all similarly situated employees." Plaintiffs' Motion at Section 2.C.

Both Plaintiffs worked for only one Vendor, Tier One, and worked only at on single KSW location. Ex. A at ¶ 9. There is no evidence that the Plaintiffs worked on any other job site or at any other KSW location, or have ever even spoken with Consultants at other locations in other States who worked for other Vendors. Plaintiffs' own supporting evidence—their declarations— confirm this: "my observations ***on location***…" White Dec. at ¶ 7, 8, 9, 11, 12, 13, 14; Shaw Dec. at ¶ 7, 8, 9, 11, 12, 13, 14. (emphasis added). The conclusory statements in Plaintiffs' declarations fail to address any of the critical *specifics* about other current and former individuals whom they wish to include in a collective action or why the class should be broader than one limited to Consultants working for Tier One at a single KSW site. *See Botello v. COI Telecom, LLC*, No. 10-CV-305-XR, 2010 WL 5464824, at *7 (W.D. Tex. Dec. 30, 2010) (denying conditional certification of an independent contractor class—even though the proposed class involved one job position—in part because the positions varied based on geographic location).

17

**C.** **Defendants lack the information necessary to identify the members of the proposed class, making conditional certification inappropriate.**

Plaintiffs seek conditional certification of a class of "all current and former Solids Control Consultants that worked for or on behalf of KSW Oilfield Rentals, LLC and Dupre Energy Services, LLC who were classified as independent contractors and paid a day-rate during the last three (3) years ('Putative Class Members')." Plaintiffs Complaint at ¶ 15. Yet, Defendants lack the information necessary to determine who this definition might encompass without auditing its Vendors if it has that right. As noted above, it was the Vendors—not the Defendants—who determined the compensation structure and paid the Consultants. It was the Vendors—not KSW— who maintained all personnel and payroll records. The Consultants never even worked for or with Dupre and neither defendant has employment records for the Consultants that were employed by the various Vendors. Defendants do not have knowledge of who the Vendors paid a day-rate. As a matter of logistics, Defendants cannot even determine which individuals would comprise the putative class without attempting to audit or subpoena numerous other entities because the Vendors—not KSW—have sole knowledge of the information. For this very reason, KSW is not the employer and conditional certification should be denied.

**D.** **Dupre is not a proper party to this suit.**

Although neither defendant was the employer of Plaintiffs or the other Consultants, Dupre has absolutely no connection to any of the Consultants. Plaintiffs worked for Tier One and Dupre never utilized the services of any Consultants from Tier One or the other Vendors. *See* Ex. A at ¶ 9. Dupre does not have a master service agreement or other contract with Tier One or the other Vendors. *Id.* KSW never sent any Consultants to perform work at a Dupre location or for Dupre. *Id.* Dupre never paid the Vendors or Consultants any money and the Vendors and Consultants never performed any services for Dupre. *Id.*

18

Dupre and KSW may be affiliates, but any such affiliation does not create potential liability for Dupre. There is no legal basis for Dupre to be a part of this lawsuit and there have been no specific allegations as to Dupre, rather than KSW. Instead, Plaintiffs simply allege that the Defendants employed the Consultants. However, Plaintiffs proposed notices are directed only to individuals who worked for or on behalf of KSW—Dupre is never mentioned in the notices because it cannot be a proper party to this lawsuit.

### E.   Plaintiffs' proposed notice is improper in several material aspects.

In the unlikely event that the Court is inclined to grant conditional certification, Defendants object to the content, form, and method of distribution of Plaintiffs' Proposed Notices attached as Exhibit 3-5 of the Plaintiffs' Motion.

The contact information requested is overly broad, unnecessary, and should be limited, as is typical in FLSA cases, to names and last known home addresses. *See e.g., Altiep v. Food Safety Net Servs., Ltd.*, No. 3:14-CV-00642-K, 2014 WL 4081213, at *6 (N.D. Tex. Aug. 18, 2014) (denying plaintiff's request for the production of email addresses and telephone numbers, and limiting production to just names and last known addresses, because "[p]rivacy concerns abound in requiring disclosure of information beyond names and addresses."); *Humphries v. Stream Int'l, Inc.*, No. 3:03-cv-1682-D, 2004 U.S. Dist. LEXIS 20465, at *12 (N.D. Tex. Oct. 7, 2004) (denying plaintiff's request for telephone numbers, and reasoning that "highly personal information about persons who may in fact have no interest in this litigation should not be disclosed on the thin basis that [plaintiff's] counsel desires it"); *Aguilar v. Complete Landsculpture, Inc.,* No. Civ. A 3:04-CV-0776 D, 2004 WL 2293842, at * 5 (denying plaintiff's request for telephone numbers, and requiring defendants to only provide names and addresses).  Plaintiffs' counsel should not be permitted to contact Consultants through their work-related email accounts, assuming the Vendors provided work-related email accounts. *See* Altiep, 2014 WL 4081213 at * 6.  Defendants did not

provide any Contractors with work-related email account. Allowing contact through any work-related accounts would not only unduly impose on the Vendor's employees' privacy, but also cause unnecessary work distractions  and the Vendors likely have policies prohibiting their employees from using company email addresses for personal business. *See Aguilar*, 2004 WL 2293842 at *5 ("the need for compelled disclosure of such data [is] outweighed by the privacy interests of potential class members, and [there is] no apparent reason to conclude that sending a letter to the person's last known address would be inadequate").

Plaintiffs' counsel should not be permitted to contact Consultants by phone, which allows counsel to significantly impact the Consultants even if a script is followed. Phone calls are unduly intrusive and unnecessary and phone calls from a law firm would create a heightened importance or urgency regarding this case in the minds of the Consultants. *See Altiep*, 2014 WL 4081213 at *6 ("Mailing the notice to potential plaintiffs offers adequate notice of their opportunity to participate in this case."). Counsel for Plaintiffs should not be permitted to call Consultants to notify them of any ability to opt-into the lawsuit, much less have the opportunity to call several times as proposed.

Additionally, there are also statements in the proposed notices that are misleading based on the allegations and defenses in the case or do not provide an accurate reflection on both sides' position in this case. For example, Defendants should be entitled to include statements demonstrating that they deny the Plaintiffs' allegations, deny that they violated the FLSA, and deny that any individuals are entitled to any additional compensation. The notice should also include notification that the Court has not yet ruled on the merits of the case.

On page 2 of Exhibit 3, the proposed notice states that "you are entitled to the protections and benefits provided by the Fair Labor Standards Act ("FLSA"), including the right to be paid

6852533

overtime for all work over 40 hours in a workweek." That sentence needs to be qualified as an allegation made by Plaintiffs or be premised on Plaintiffs being successful in the lawsuit. There are numerous similar statements in Exhibit 3, including "the FLSA requires KSW to pay you for all hours worked, including overtime." The Court has not yet determined whether the FLSA applies to KSW with respect to the Consultants or ruled that KSW was required to pay overtime. There are also incorrect factual statements, including that KSW paid Consultants a day rate without a salary. KSW did not in fact pay the Consultants a day rate. The Vendors paid the Consultants and KSW did not make any decisions regarding how, when, or by what method the Vendors compensated their employees.

In the unlikely event that this Court decides to conditionally certify a class, Defendants request the Court order the parties to confer in an attempt to agree upon the content and form of notice as well as an appropriate manner of distributing it, and, for Defendants to be able to review and revise the proposed notice. To the extent they cannot agree, Defendants request that this Court allow Defendants be given an opportunity to brief any outstanding issues.

**F.      Plaintiffs' proposed limitations period is improper.**

Plaintiffs have failed to meet their burden for conditional certification and their Motion should be denied. In the event, however, that this Court decides to certify a class, Defendants object to Plaintiffs' proposed limitations period. Plaintiffs request that the Court conditionally certify this case as a collective action and direct that all notice be sent to "all current and former Solids Control Consultants that worked for or on behalf of KSW Oilfield Rentals, LLC and Dupre Energy Services, LLC who were classified as independent contractors and paid a day-rate ***during the last three (3) years*** ('Putative Class Members')" (emphasis added). Plaintiffs, however, have failed to present sufficient evidence to support a potential class that encompasses employees who worked for Defendants over a three-year period.

6852533

In general, claims under the FLSA are subject to a two-year statute of limitations. *See* 29 U.S.C. § 255(a). A three-year statute of limitations applies only if the alleged violation was willful. *Id*. To establish a willful violation, the plaintiff must present evidence that the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute. *McLaughlin v. Richland Shoe Co.,* 486 U.S. 128, 133 (1988). Plaintiffs have not produced any evidence whatsoever that would suggest that Defendants knew or showed reckless disregard for whether its conduct was prohibited by statute. Accordingly, Plaintiffs have failed to meet their burden to conditionally certify a class that includes a three-year period.

## V.   CONCLUSION

For the foregoing reasons, Defendants KSW Oilfield Rental, LLC and Dupre Energy Services, LLC respectfully request that the Court deny Plaintiff's Motion for Conditional Certification and Court-Authorized Notice in its entirety. Alternatively, if the Court grants Plaintiffs' Motion for Conditional Certification and for Notice to Putative Class Members, Defendants respectfully request that the Court restrict the potential class to only those Consultants the Court determines are similarly situated to White and Shaw, and allow Defendants to coordinate with Plaintiffs on the content of any notification.

6852533

Respectfully submitted,

**PORTER HEDGES LLP**

*/s/ Stephen H. Lee*
Susan E. Cates
State Bar No. 24044932
Federal ID No. 18313
**Attorney-in-Charge**
1000 Main Street, 36th Floor
Houston, Texas 77002
(713) 226-6686 Telephone
(713) 226-6628 Facsimile
slee@porterhedges.com

**OF COUNSEL:**

**PORTER HEDGES LLP**
Susan E. Cates
State Bar No. 24044932
Federal ID No. 621240
1000 Main Street, 36th Floor
Houston, Texas 77002
(713) 226-6709 Telephone
(713) 226-6309 Facsimile
scates@porterhedges.com

**ATTORNEYS FOR DEFENDANTS**
**KSW OILFIELD RENTAL, LLC AND**
**DUPRE ENERGY SERVICES, LLC**

## CERTIFICATE OF SERVICE

A copy of the foregoing was electronically filed with the Court on this 5th day of October

2018 and will be automatically delivered to all parties via the Court's electronic filing system.

*/s/ Susan E. Cates*
Susan E. Cates

23

6852533